[Civ. No. 3339. Fourth Dist. Aug. 1, 1944.]

ANNIE L. AMBROSE et al., Respondents, v. MARY ALIOTO, Appellant.

Sloane & Steiner for Appellant.

Gray, Cary, Ames & Driscoll and John M. Cranston for Respondents.

BARNARD, P. J.—The plaintiffs brought this action to compel the defendant to convey to them, respectively, certain interests in a boat. The defendant owned a fishing boat which had been losing money and which was mortgaged to the Bank of America for $31,200. She desired to convert it into a tuna boat at an estimated cost of $23,500. With this end in view she entered into a written contract on April 30, 1938, with Wiley V. Ambrose, who was a fish canner and president of Westgate Sea Products Company. This corporation will be referred to as "Westgate."

So far as material to this discussion, this contract provided

that $6,500 of the cost of conversion should be paid by the defendant and $17,000 by Ambrose; that if the cost of conversion was less than the estimate the defendant could use the balance for maintenance and operation; that any excess cost over the estimate should be paid equally by the parties; that as security the defendant should give to Ambrose a note for $17,000, payable on or before three years, without interest, with a second mortgage on the vessel; that all fish caught with the boat for five years should be delivered to Westgate; and that, after paying certain operating expenses, Westgate should apply the balance of the proceeds in payment of the bank's first mortgage.

Paragraph 8 of the contract then provided that the defendant should manage the boat so long as its earnings were sufficient to pay all amounts coming due on the mortgage to the bank; that otherwise Ambrose might assume control and appoint his own master and crew; that if the earnings of the boat after a reasonable time were still insufficient to cure any default under the bank's mortgage the vessel should be sold; that the net proceeds of the sale should be divided equally between the parties and any indebtedness of the defendant to Ambrose should be deemed satisfied and discharged; and that if his operation of the boat proved successful Ambrose should continue to manage the boat until the bank's mortgage was paid.

Paragraph 9 provided that when the bank's mortgage was paid Ambrose should have the option either (a) to receive a new note for $17,000 plus one-half of the principal amount paid to the bank during the life of the agreement (payable on or before two years with interest at 6 per cent secured by a first mortgage on the boat), or (b) to receive a bill of sale to an undivided one-half interest in the vessel. In either event, the original $17,000 note and second mortgage was to be cancelled and satisfied.

Paragraph 12 provided that at any time after two years from the time Ambrose received such a bill of sale, the defendant should have the option of repurchasing his half interest by paying him the amounts mentioned in subdivision (a) of paragraph 9, with interest at 6 per cent from the date of the bill of sale.

The work on the boat was completed at a cost of about $5,000 in excess of the estimate, which amount was advanced

by Westgate. Mr. Ambrose died and his interest in this contract, and in Westgate, passed to his wife Annie L. Ambrose, so far as material here. The boat was operated for some two years at a loss and on June 15, 1940, the debts against the boat amounted to over $65,000, exclusive of the $17,000 Ambrose had advanced on the project. The bank was threatening to foreclose its first mortgage and on June 27, 1940, Mrs. Ambrose's son, acting as her agent, gave the defendant written notice that pursuant to paragraph 8 of the contract he had taken over the management of the boat and appointed a new captain and crew, that he had appointed Joe Alioto as captain and, in order to secure his full cooperation, had agreed to give him a one-fifth interest in the boat when all of the existing liabilities had been paid. The notice then informed the defendant that under this agreement with Joe Alioto ''when and if said liabilities are paid off completely, it will then be in order for both of us to deed to Joe Alioto enough of our interest in said vessel to give him an undivided one-fifth interest,'' and asked the defendant for her approval. The defendant signed this notice as ''Accepted: 7-2-40'' before two witnesses.

The operation of the boat with Joe Alioto as master proved successful and by May, 1943, the $65,000 indebtedness above referred to had been reduced to about $9,000, the bank's first mortgage having been fully paid. Mrs. Ambrose then notified the defendant in writing that she elected to receive an undivided one-half interest in the vessel and offered to deliver up and discharge the note and mortgage for $17,000 given under the original agreement. The defendant refused to convey any interest in the vessel but offered to pay to Mrs. Ambrose the amounts mentioned in subdivision (a) of paragraph 9 of the agreement.

In this action which followed, Mrs. Ambrose recognized the right of Joe Alioto to a one-fifth interest in this boat and a judgment was asked for requiring the defendant to specifically perform the agreements above mentioned and directing her to execute a bill of sale to Mrs. Ambrose for an undivided two-fifths interest in this boat and another to Joe Alioto for an undivided one-fifth interest therein. The court found in all respects in favor of the plaintiffs and entered a judgment directing the defendant to convey an undivided two-fifths

interest to Mrs. Ambrose and an undivided one-fifth interest to Joe Alioto. From this judgment the defendant has appealed.

■ With respect to the judgment as affecting Mrs. Ambrose, appellant's sole contention is that the transaction covered by the contract of April 30, 1938, constituted a loan of $17,000 by Ambrose to the appellant; that subdivision (a) of paragraph 8 of the contract provides for a bonus of $15,600 for making this loan; that subdivision (b) of paragraph 8 carries the same bonus provision which must be eventually paid before the appellant may redeem the property and clear the boat; that these bonus provisions are usurious and unenforceable; that Mrs. Ambrose is, therefore, legally entitled only to a return of the $17,000 originally advanced, without interest; and that it follows that the judgment giving her an interest in the boat should be reversed. Cases are cited in which it has been held that where the transaction is purely a loan the lender may not contract for more than legal interest through any device or scheme intended to evade the Usury Law or to obtain more interest under another name.

We think it rather clearly appears from its terms that this contract was something more than, and quite different from, a mere loan of money and that the provision for the giving of a note and mortgage as security was but an incidental part of the transaction. Mr. Ambrose was engaged in the fish canning business and was undoubtedly interested in getting fish for his cannery. The inference would seem reasonable that his main purpose was to get this boat in operation and secure the fish it produced for his cannery. In any event, he was willing to advance $17,000 and to risk that amount, as well as any return thereon, on the success of the venture. It makes no difference by what name the relationship created by this contract is called. Whatever else it does, the contract provides for a form of joint enterprise in which he was to participate and through which he might well lose all or a part of the amount he agreed to advance. The appellant did not agree to repay the $17,000 in any event. It was clearly provided in paragraph 8 that if the operation of the vessel proved unsuccessful Ambrose's recovery should be limited to half of the net proceeds of the sale of the boat, and

that he should cancel any obligation on the part of the appellant.

Ambrose was to receive nothing unless and until the bank's mortgage was paid in full. In the meantime, he was not only interested in having the boat produce that result but he was authorized to take over its full management to that end, which he later did. When the bank's mortgage was paid he was to surrender and cancel the $17,000 note and second mortgage, which had never called for any interest. He then had the option to ask for and receive a note and mortgage for his $17,000 plus what amounted to one-half of the profits up to that time, or to receive a conveyance of a half interest in the boat, subject to appellant's right to take over the entire boat two years later at a price which included his share of the profits up to the time the mortgage was paid.

In a very real sense Ambrose was hazarding his investment on the success of the enterprise and was to receive a share in the earnings of the boat, and finally and possibly in the boat itself, rather than any interest on his investment or any flat obligation to repay the same. Even the appellant concedes that at the time of the transaction "Actually the $17,000 loan was a poor risk."

The general rule here applicable is thus stated in 11 California Jurisprudence Ten-year Supplement, page 112:

"When the whole sum advanced is put in hazard—as where one advances money under a contract that may be satisfied by delivery of property of uncertain or speculative value or the payment of an increased amount by a specified date—the amount to be repaid may be considered a price set for the surrender of an investment, rather than a usurious loan."

The principles pointed out in *Jameson* v. *Warren,* 91 Cal. App. 590 [267 P. 372]; *Lamb* v. *Herndon,* 97 Cal.App. 193 [275 P. 503]; *Miley Petroleum Corp.* v. *Amerada Petroleum Corp.,* 18 Cal.App.2d 182 [63 P.2d 1210]; *Westman* v. *Dye,* 214 Cal. 28 [4 P.2d 134] and *Van Noy* v. *Goldberg,* 98 Cal. App. 604 [277 P. 538], are applicable and controlling here insofar as this respondent is concerned.

The claims and rights of the respondent Joe Alioto rest upon his agreement for taking charge of this boat and upon its confirmation through the written notice of June 27, 1940, and the acceptance thereof signed by the appellant. It was

thereby agreed that he was to be given a one-fifth interest in the boat when and if certain liabilities were paid. A list of these liabilities against the boat and which were to be "paid off" was furnished. This list totaled $80,512.26 and included a balance of $27,706.24 on the bank's mortgage and an item "due W. V. Ambrose Estate on note $17,000."

Joe Alioto acted as master of the boat for something over two years, during which time the debts against the boat were largely reduced but not entirely paid off. The appellant then discharged Joe Alioto and put another master in charge of the boat. The trial court found that Joe Alioto was wrongfully discharged by her and this finding is not questioned.

This action was filed after the bank's mortgage had been paid in full. At the trial, following an opening statement by counsel for the plaintiffs, the defendant moved for judgment, as to this part of the action, on the pleadings and on that statement, which was denied. This motion was apparently based on the contention that all of the debts against the boat had not been paid. During the trial evidence was admitted showing that after the action was filed the boat in question had made two trips and that the profits therefrom had been sufficient to pay all outstanding debts against the boat (disregarding the alleged debt of $17,000 to Mrs. Ambrose), and to leave a surplus of a little over $6,000.

The appellant contends that Joe Alioto was not entitled to specific performance since the contemplated debts were not fully paid at the time the action was brought, and that the bringing of this part of the action was premature. It is contended that the $17,000 originally advanced by Ambrose is a debt which has not yet been paid since she must pay that amount and more before she can clear her title to the boat, and that other debts of about $9,000, although subsequently paid, had not been paid at the time the action was brought.

With respect to the $17,000 item, Mrs. Ambrose was entitled to a conveyance of an interest in the boat, and was then under obligation to cancel the note and second mortgage which had been given. That amount then represented an interest in the ownership of the boat and not a debt against the boat. Any possible obligation in this respect, as a debt against the boat, had then been discharged. The appellant could not alter the

legal situation then existing by refusing to convey. This particular "debt" had been sufficiently paid and discharged within the meaning and effect of the second agreement in which Joe Alioto was interested.

There remains for consideration the other debts against the boat in the approximate amount of $9,000, which were subsequently paid through the operation of the boat pending the trial, but which had not been paid when the action was filed. Joe Alioto's performance of this part of the agreement was prevented by his wrongful discharge by the appellant. An incomplete performance is not necessarily a defense to an action for specific performance. This is true where there has been a substantial performance and a full performance is prevented by the action of the other party. (*Lucy* v. *Davis,* 163 Cal. 611 [126 P. 490].) This principle is peculiarly applicable here since the operation of the boat pending the trial demonstrates that all these debts would have been paid by the profits from the boat and that Joe Alioto would have been entitled to a one-fifth interest in the boat had he not been wrongfully discharged by the appellant. A supplemental and amended complaint was filed with the permission of the court to cover the subsequent happenings and to conform to the proof. The action was one in equity, there had been not only a very substantial performance but a full performance had been prevented by the action of the appellant, and it was within the equitable powers of the court to dispose of the entire matter in this one action without compelling the parties to bring and defend another action which would necessarily lead to the same result.

Moreover, the exact conveyance that should be made to Mrs. Ambrose could not be determined without considering the rights of Joe Alioto. For this reason, as well as those above indicated, it cannot be held that this part of the action was premature.

The appellant further contends that Joe Alioto's contract was not specifically enforceable since it was not mutual in that he could not have been compelled to render personal services as master of this boat. It may be conceded that this contract could not have been specifically enforced in the beginning, but when it was fully performed it would be specifically enforceable. (Civ. Code, § 3386.) His further per-

formance having been prevented by the appellant, this principle is applicable and it must be considered to have been sufficiently performed, within the meaning of section 3386, to enable him to maintain this action and to enable a court of equity to grant the relief which was appropriate under the circumstances.

The judgment appealed from contained a paragraph reading as follows:

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the defendant, Mary Alioto, and all persons under her control, at her direction or on her behalf be, and said defendant and all such persons are hereby, enjoined and restrained from delivering to Sun Harbor Packing Company or to anyone other than Westgate Sea Products Co., any fish caught on any fishing voyage made by the vessel 'Dependable'."

There is nothing to support that part of the judgment, since the period had expired during which it was agreed that all fish caught from this boat should be delivered to Westgate. Moreover, the complaint asked for such an injunction only with respect to "the present voyage" of this boat. That voyage was completed before the trial. There was neither pleading nor proof justifying a continuing injunction, under the new ownership of the boat, much less one covering all future time.

The respondents argue that the appellant has no right to raise such a point for the first time on petition for rehearing. Assuming that this is true, where such an obvious error comes to the attention of the court, it may be corrected on the court's own motion.

The judgment is modified by striking therefrom the paragraph above quoted, and as so modified the judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied August 29, 1944, and the opinion and judgment were modified to read as above. Appellant's petition for a hearing by the Supreme Court was denied September 28, 1944.