[Civ. No. 4613.   Fourth Dist.   Mar. 30, 1953.]

JOHN B. MOORE et al., Respondents, v. R. T. DEALY, Appellant.

90

Clyde E. Cate and Ralph Robinson for Appellant.

Walch & Griswold for Respondents.

MUSSELL, J.—Defendant R. T. Dealy appeals from a judgment awarding plaintiffs damages for breach of contract and denying defendants relief on their cross-complaint. The contract in question was in writing and was executed by the parties on July 15, 1950. It is stated therein that R. T. Dealy is a general contractor and that he was awarded the general contract for an addition to the Coalinga Hospital; that in order to make possible the awarding of the contract to Dealy, it was necessary that there be on deposit, for his use in connection with the performance of the contract, the sum of $25,000, which said sum Dealy could not, himself, advance; that the Peerless Casualty Company had issued a performance bond to Dealy conditioned upon the deposit of $25,000 to be used in the performance of the contract; that Reeves and Moore were able and willing to arrange for the deposit of said sum, to be used in the per-

formance of the contract, each advancing the sum of $12,500. It was then agreed that Reeves and Moore would deposit the money in a commercial bank account, subject to withdrawal upon the joint signatures of Dealy and either Reeves or Moore; that the $25,000 was to be withdrawn and paid for labor, materials for and on account of the hospital addition and in furtherance of the performance of the contract between Dealy and the hospital district; that "it shall be the duty and the obligation of G. W. Reeves and John B. Moore to review, analyze and study the items and accounts calling for payment in the performance of said contract, and after said review and analyzation, the said G. W. Reeves and John B. Moore are to authorize, in cooperation with R. T. Dealy, the payments of the said bills incurred in the performance of the said contract."

Dealy agreed to deposit all funds received from the district in the commercial account and that all funds in said account should be first withdrawn for the payment of materials, labor and other direct costs and expenses under the contract.

Reeves and Moore agreed, when requested, to advise and consult with Dealy as to the performance of the contract and if requested by Dealy, to inspect the work and progress thereof from time to time. It being understood and agreed that Reeves and Moore were both skilled in construction work. It was further agreed that the relationship of Reeves and Moore with Dealy "is not one of partnership, nor one of joint venture, but is an arrangement whereby the said G. W. Reeves and John B. Moore are assisting the said R. T. Dealy in the performance of his contract, and assisting in the disbursement of the funds in payment for materials and labor and other items in the construction work, and in assistance in obtaining a performance bond from the Peerless Casualty Company, and in the advance of the said sum of $25,000.00 which is to be used in the construction of said addition."

Provision was made for return to Reeves and Moore of the money advanced by them, after the payment of labor and material costs and after the expiration of 35 days from the notice of completion of the contract. The contract then provides as follows:

"Prior heretofore and on the 15th day of June, 1950, the said R. T. Dealy and his wife made and executed and delivered two (2) promissory notes, each in the sum of $5,000.00. One payable to G. W. Reeves and wife, and one payable to

John B. Moore and wife. Said notes being due and payable on the 15th day of June, 1951. It is agreed that said notes represent the compensation and payment for services rendered and to be rendered by said G. W. Reeves and John B. Moore to the said R. T. Dealy, in and about the securing of said contract and performance of said contract with the Coalinga Hospital District. It is understood and agreed that all sums accruing or arising in and under said contract shall be paid into the commercial account hereinabove specified, and upon the filing of the Notice of Completion and the acceptance of the addition as called for by the contract and the elapsing of forty-five days, that there shall be paid the sum of $5,000.00 to said G. W. Reeves and the sum of $5,000.00 to said John B. Moore, and that said payments shall be payment in full of said promissory notes as herein described and referred to.''

It was further agreed that any money remaining in the commercial account, after the return of the $25,000 to plaintiffs and the payment of the two notes, should be paid to Dealy and that he would pay plaintiffs the $25,000 furnished by them, plus $10,000 due on the notes if the commercial account was insufficient for that purpose.

On June 12, 1950, Dealy's bid for the construction of the Coalinga Hospital addition was accepted. Prior to that time plaintiffs and Dealy had discussed the matter of providing the performance bond of $25,000 and Dealy suggested to Reeves and Moore that if they would put up the money, he would give them one-half of the profits, estimated at $30,000. Reeves told Dealy that he and Moore could raise the $25,000 on the basis of sharing the profit. Moore and Dealy and Mr. Pressey, a representative of the bonding company, then went to San Francisco and arrangements were made with the bonding company for a bond, with the understanding that if the contract were awarded to Dealy, Moore and Reeves would put up the $25,000. It was recommended at this meeting that the parties seek legal counsel to have a contract, a proper contract, drawn between the parties. On their return from San Francisco, the parties met in Pressey's office and three alternative propositions were offered by Dealy: 1. That they would deduct all the costs of the job, including overhead, and then split the profits; 2. That he would take two-thirds of the profits and give Moore and Reeves one-third; or 3. He would guarantee a profit of $5,000, each, to Moore and Reeves, and would give them notes for this amount. On June 15, 1950, Reeves and Moore decided to take $5,000 each for their share of the profits. Dealy

and his wife then executed and delivered to Reeves and Moore two promissory notes, each for $5,000.

An agreement was prepared by an attorney at the request of Dealy. However, this agreement was not satisfactory to Reeves and Moore and Attorneys Walch and Griswold then prepared the contract, dated July 15, 1950, upon which this action was brought. Pursuant to this agreement, Reeves and Moore reviewed, analyzed and studied the items and accounts calling for payment in the performance of the construction, authorized payment of the bills and inspected the job on numerous occasions.

On December 26, 1950, Reeves, Moore and Dealy each withdrew $1,000 from the commercial account with the understanding that the money would be returned to the account if needed. On January 23, 1951, Dealy needed $4,000 and prepared three checks for this amount, one for each of the parties. He presented them to Moore for his signature, together with a demand for the return of the two $5,000 promissory notes. Moore signed Dealy's check and refused to return the notes. The checks to Moore and Reeves were not signed or cashed at that time because they felt that all of the money would be needed to complete the construction job.

On March 12, 1951, a progress payment in the sum of $17,390.53 was made by the hospital district. Defendants' evidence was that this payment was received on March 19th, 20th or 21st. On or about March 13, 1951, Mrs. Dealy made out a series of checks in payment of accounts payable. These checks were signed by Dealy and Moore and when the progress payment was received, Reeves had not signed the checks. Reeves ascertained that the progress payment had not been deposited in the commercial account and he refused to sign the checks. The record shows that Mrs. Dealy kept the progress payment until March 28th and then deposited it to the account of R. T. Dealy Company. Dealy refused to place the progress payment in the commercial account and Reeves refused to sign the checks for the accounts payable. This disagreement resulted in an offer by Dealy to return plaintiffs' money and prorate the profits. However, the parties could not agree on the prorate method.

Dealy issued checks to Reeves and Moore for $7,500 each and these checks were cashed by them, together with the checks for $4,000 which they had previously received. Reeves and Moore then quit their jobs and filed this action, claiming damages in the sum of $10,000 for breach of contract. The trial

court rendered judgment awarding plaintiffs the damages prayed for and this appeal followed.

The principal contention of appellant Dealy is that the agreement of July 15, 1950, was an agreement in violation of the usury statutes. In this connection the trial court found "that the arrangements evidenced by the agreement dated July 15, 1950, and the promissory notes dated June 15, 1950, constituted the entering into by plaintiffs John B. Moore and G. W. Reeves and defendant R. T. Dealy of a business enterprise for profit; that the advance of $25,000.00 by said plaintiffs John B. Moore and G. W. Reeves for the use of defendant R. T. Dealy was in no sense a loan but was deposited to make the enterprise a success and that the promissory notes dated June 15, 1950, were merely an evidence of guaranteed profit to plaintiffs John B. Moore and G. W. Reeves, binding defendant R. T. Dealy and were in no way a scheme to evade the Usury Law of the State of California; that said notes were not in violation of the Usury Law of the State of California." This finding is sufficiently supported by the evidence. Moore and Reeves were skilled in construction work. They agreed to oversee the job, see that it ran according to their estimates, take a survey and analyze the bills, assist Dealy and help him run the job. There is testimony that Moore and Reeves checked the job on several occasions on weekends and after working hours and that Moore usually signed the bills after finishing work.

The question of whether the contract involved was usurious was one of fact for the trial court's determination and since the finding in this respect is justified by the evidence, it is binding upon us. (*Miley Petroleum Corp., Ltd.* v. *Amerada Petroleum Corp.*, 18 Cal.App.2d 182, 191 [63 P.2d 1210].)

The test is whether there was an attempt to evade the law. As was said in *Rose* v. *Wheeler*, 140 Cal.App. 217, 219, 220 [35 P.2d 220]:

" 'In a usurious transaction, there must be a loan of money, which is to be repaid to the lender, with compensation for its use in an amount constituting a charge in excess of the highest permissible rate. And as a necessary concomitant there must exist the corrupt intent to exact the illegal charge for the use of the money lent. (*Lamb* v. *Herndon*, 97 Cal.App. 193, 197 [275 P. 503].)

" 'The presumptions of law are in favor of legality; and therefore if the transaction in question is open to two constructions, one making for legality, the other for illegality,

then in the absence of evidence pointing clearly to usury, it is the duty of the court to adopt the construction in favor of lawfulness. (*Coley* v. *Wolcott,* 103 Cal.App. 140 [284 P. 241] ; *Shelley* v. *Byers,* 73 Cal.App. 44, 57 [238 P. 177].)' "

The evidence supports the trial court's finding that the parties in the instant action entered into a business enterprise for profit. The $25,000 furnished by plaintiffs was deposited in a commercial account, subject to joint control of the parties. It was to be used for the payment of labor and material used in the construction work and not as a loan to Dealy. The parties were primarily interested in carrying out the construction contract at a profit for all concerned. ■ Where, as here, the facts show a joining of funds, property and labor in a common purpose to attain a result for the benefit of the parties and where each had a right in some measure to direct the conduct of the other through a fiduciary relationship which existed, the court was justified in finding that the parties engaged in a business enterprise for profit which was in the nature of a joint venture. (A provision in the agreement to share the losses being implied.) (*Martter* v. *Byers,* 75 Cal. App.2d 375, 384 [171 P.2d 101].) Under such circumstances, the agreement in question is not usurious. (*Fitzgerald* v. *Provines,* 102 Cal.App.2d 529, 538 [227 P.2d 860].)

■ Appellant Dealy's next contention is that he did not breach the contract by failing to deposit the progress payment of $17,390.53 in the commercial account since Reeves had refused to sign the checks for the payment of the bills. There is no merit in this contention. The evidence shows that Dealy converted the payment to his own use by placing it in his own bank account contrary to the terms of the contract between the parties. There was testimony to the effect that it was customary for Reeves to sign the checks after the progress payment was received and deposited. The evidence is sufficient to support the trial court's finding that the failure of Dealy to deposit the progress payment in the commercial account gave plaintffs legal cause for refusing further performance of the contract and that plaintiffs were prevented from further performance by the failure and refusal of Dealy to comply with the terms of the contract.

Appellant argues that after the parties began to disagree in March, 1950, they entered into an oral agreement for the purpose of settling their differences and that this oral agreement was executed. The evidence does not support this contention. While several offers were made by Dealy to settle

the differences, none of them were unconditionally accepted by Moore and Reeves.

Finally, it is argued that the court erred in fixing the amount of damages to be allowed for breach of contract. There was no error in the award made. (Civ. Code, § 3302; *Newmire* v. *Ford*, 20 Cal.App. 337 [128 P. 952]; *Bartlett* v. *Odd Fellows Savings Bank*, 79 Cal. 218 [21 P. 743, 12 Am. St.Rep. 139].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 28, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.