[Civ. No. 4599. Fourth Dist. Sept. 21, 1953.]

HERMAN A. HERSUM et al., Appellants, v. GEORGE D. LATHAM et al., Respondents.

H. F. Landgraf for Appellants.

Johnson & Johnson for Respondents.

MUSSELL, J.—Plaintiffs appeal from a judgment against them on the first cause of action in a complaint in which they alleged that defendants had extracted interest from them in excess of 12 per cent for the loan of money.

Plaintiffs were the owners of and operated a wholesale and retail lumber and supply business in Chula Vista. Prior to August 6, 1951, they became involved in financial difficulties and to secure cash for working capital and to meet their financial obligations, they procured a loan from the San Diego Wholesale Credit Men's Association and executed a promissory note therefor in the sum of $24,000. The note was secured by a deed of trust covering their home and other real property. Plaintiffs were unable to pay the note and it became apparent that their creditors would foreclose the trust deed and enforce their claims. Mrs. Hersum then, on or about June 1, 1951, approached defendant George Latham (who was manager of defendant American A-One Investment Company and who, with his wife, owned controlling interest therein) for the purpose of securing a loan. Mr. Latham testified that he informed her that he was not in the loan business; that two or three weeks later she again called upon him and asked for a loan and it was refused; subsequently the agreements, which are the subject of this controversy, were executed by the parties.

In the first of these agreements, dated August 6, 1951, between American A-One Investment Company and the plaintiffs, American agreed to purchase the $24,000 note held by the San Diego Wholesale Credit Men's Association, and to extend the note and trust deed for a period of two years, if

the interest and other payments were made on it. Plaintiffs agreed to execute a chattel mortgage on their personal property as additional security. They agreed to form a corporation to take over and operate the lumber business and agreed to transfer all their assets, except clothing and personal effects, to the corporation. It was agreed that the new corporation should issue 5,000 shares of stock, of which American was to receive 2,750 shares, and that these shares would be released to plaintiffs when the said $24,000 note had been reduced to $10,000. American agreed to give plaintiffs a 10 per cent discount on the $24,000 note if paid within two years. Detailed arrangements for the operation of the business by the parties were then set forth in the agreement. On September 6, 1951, an amendment to this contract was executed by the parties in which American agreed to advance an additional $10,000, secured by a trust deed and chattel mortgage and the number of shares of the new corporation to be given to American was reduced to 2,450.

On August 11, 1951, the Hersums and the Lathams executed a contract in which, in consideration of the sum of $2,400 to be deposited in escrow by the Lathams and to be used in payment of debts of the business, the Hersums agreed to sell the Lathams 2,250 shares of the new corporation stock. The Lathams agreed to give the Hersums the right to repurchase said 2,250 shares within two years of the date of the agreement for $8,400, plus interest, provided the debt to the American A-One Investment Company was paid. This contract was also amended by an agreement executed September 6, 1951, in which the Lathams agreed to pay the Hersums an additional $100 and the original agreement was amended to substitute 2,550 shares of the new corporation stock for the said 2,250 shares thereof. The Hersums were given the right to repurchase the 2,550 shares within two years from the date of the original agreement for the sum of $10,900.

The American A-One Investment Company purchased the $24,000 trust deed. The Lathams advanced the said $10,000, as agreed, and deposited the said sum of $2,500 for the purchase of the Hersum stock as required by the August 11, 1951, agreement, and the plaintiffs now claim that the transaction involving the loan of the said $10,000 and the transfer of the said 2,550 shares of stock was usurious as said stock had a reasonable value of $33,142.69.

328

■ In *Moore* v. *Dealy,* 117 Cal.App.2d 89, 94 [254 P.2d 888] (hearing denied by the Supreme Court) this court held:

"The question of whether the contract involved was usurious was one of fact for the trial court's determination and since the finding in this respect is justified by the evidence, it is binding upon us. (*Miley Petroleum Corp., Ltd.* v. *Amerada Petroleum Corp.,* 18 Cal.App.2d 182, 191 [63 P.2d 1210].)

■ "The test is whether there was an attempt to evade the law. ■ As was said in *Rose* v. *Wheeler,* 140 Cal.App. 217, 219, 220 [35 P.2d 220]:

" 'In a usurious transaction, there must be a loan of money, which is to be repaid to the lender, with compensation for its use in an amount constituting a charge in excess of the highest permissible rate. And as a necessary concomitant there must exist the corrupt intent to exact the illegal charge for the use of the money lent. (*Lamb* v. *Herndon,* 97 Cal. App. 193, 197 [275 P. 503].)

■ " 'The presumptions of law are in favor of legality; and therefore if the transaction in question is open to two constructions, one making for legality, the other for illegality, then in the absence of evidence pointing clearly to usury, it is the duty of the court to adopt the construction in favor of lawfulness. (*Coley* v. *Wolcott,* 103 Cal.App. 140 [284 P. 241]; *Shelley* v. *Byers,* 73 Cal.App. 44, 57 [238 P. 177].' "

■ In the instant case there is substantial evidence to support the trial court's finding that the transactions were not usurious. Plaintiffs were in financial difficulties and were being pressed by their creditors. Latham testified that he was only interested in the transaction through a purchase of the stock of the corporation; that he was "buying into a bankrupt concern, a concern which was very questionable, purely and simply a gamble, and was gambling the $2,500 on the purchase of stock." The record shows that he took an active part in the management and operation of the business in order that it might become a mutually profitable business enterprise. The Lathams were hazarding their investment on the success of the enterprise rather than making a loan of money. Under such circumstances the finding of the trial court that the transactions were not usurious is supported by substantial evidence. (*Ambrose* v. *Alioto,* 65 Cal.App.2d 362, 367 [150 P.2d 502].)

Judgment affirmed.

Griffin, Acting P. J., concurred.