[Civ. No. 20776.   Second Dist., Div. Three.   May 5, 1955.]

JACK B. LINDSEY, Respondent, v. HELEN FARISH
CAMPBELL, Appellant.

Rafter & Fredricks and Eric Rafter for Appellant.

Matt D. Cooney for Respondent.

SHINN, P. J.—Jack B. Lindsey and Henriette L. Lindsey brought this action against Helen Farish Campbell alleging that plaintiff (sic) borrowed $6,300 from defendant, evidenced by seven promissory notes of $2,000 each, payable in nine months after date, with interest at 6 per cent per annum, and secured the same by trust deeds on seven separate parcels of real property in the city of Los Angeles. It was alleged that within one year prior to the institution of the action plaintiff paid defendant $6,300 plus $7,700, plus interest at 6 per cent per annum upon $14,000, alleged to have been ''borrowed by plaintiff from defendant.'' Treble damages were sought in the sum of $23,940 on the theory that the loans were usurious. Judgment was rendered in favor of plaintiff Jack B. Lindsey for that amount and costs and in favor of defendant for costs against Henriette L. Lindsey. Defendant appeals from the judgment.

The case was tried on an agreed statement of facts which is set out in the margin.[1] The statement was adopted as the

[1] ''That during the year 1951, Plaintiff Jack B. Lindsey was associated in business with Robert Osborne, a real estate broker, licensed by the State of California. Also associated in this business were Leo Wheeler and William Wishart, licensed real estate brokers. The Lindsey business consisted of obtaining tracts of real property, sub-dividing same, constructing homes thereon and selling the individual homes at a profit. Jack B. Lindsey being a licensed contractor was in charge of constructing the homes and Robert Osborne handled the selling portion of the business on a commission basis.

''During the months of September, October and November, 1951, Lindsey owned a tract of real property in the State of California consisting of Lots 1 through 14 of Tract 15307, said tract had been sub-divided and plans submitted to the City for the dedication of portions of the tract for streets and sewers. During the months of September and October, however, Lindsey did not have sufficient monies to post the cash bond required by the City to insure performance of the construction work agreed to by them to be performed by them in their sub-dividing plan.

''That on several occasions during said months, Lindsey met with Osborne and his associate brokers, Wheeler and Wishart and requested them to make efforts to obtain additional monies for investment in said sub-division plan so that their sub-division could be completed and construction of the proposed homes commenced.

''During the month of October, 1951 and pursuant to said request of Lindsey and Osborne, Leo Wheeler approached Mrs. Campbell, the defendant, and asked her if she was interested in supplying $6,400.00 in a real estate sub-division and stated to her that should she supply said monies, it would return $14,000.00 within one year.

''That at all times mentioned herein Helen Farish Campbell was a widow, completely unfamiliar with business and financial transactions and totally dependent for her support on income from certain trust funds which had been established by her. Mrs. Campbell relied throughout for the handling of all transactions in connection with said sub-division upon

findings of the court and there was a conclusion of law that the transaction was a usurious loan of money for which plaintiff was entitled to recover treble the amount paid by plaintiff. The answer of the defendant alleged as one of the defenses that plaintiffs were estopped from urging the contention that the transaction constituted a loan of money. The court declined to entertain the defense of estoppel not because the court was of the opinion that the facts furnished no basis for an estoppel but upon the ground that defendant had abandoned that defense. The only basis for this position of the court was that in the defendant's trial brief was found the statement ''in view of the foregoing cases, it would not seem necessary to urge defendant's second defense of estoppel.'' And the court stated ''I didn't even consider it.'' It is apparent that the court was mistaken as to the defendant's having waived this defense. It had been pleaded and if the de-

---

the advice of Wheeler, who had been a personal friend of hers for several years.

''Mrs. Campbell expressed interest in supplying the money outlined by Wheeler and requested Wheeler to inform Mr. Osborne of her interest. Within a few days Osborne called Mrs. Campbell and requested her to come to his real estate office in Van Nuys for a conference. Mrs. Campbell, accompanied by Mr. Wheeler, went to Mr. Osborne's office where such conference was held between Mrs. Campbell, Lindsay, Osborne, Wishart and Wheeler. At this meeting Mr. Lindsey and Mr. Osborne outlined the details of their sub-division plan and informed Mrs. Campbell of their desire for funds to proceed with the completion of said sub-division and for the construction of the projected homes. Mrs. Campbell stated at this meeting that she would supply $6,300.00 but that she would have to instruct her broker to sell certain stocks owned by her.

''Thereafter in a period of approximately ten days, Mrs. Campbell obtained the $6,300.00 and returned to Mr. Osborne's office where she handed the check for $6,300.00 to Mr. Lindsey. At this meeting Mr. Wheeler requested that Mrs. Campbell have some evidence of the agreement and requested that she be given second trust deeds in the amount of $14,000.00, said trust deeds being in the amount of $2,000.00 each on lots 1 through 7 of said tract. Lots 1 through 7 had a fair market value at this time of $2,800.00.

''Mrs. Campbell and Lindsey went to Southland Escrow Company in Glendale and arranged for the issuance of said trust deeds and notes which were thereafter signed by Lindsey and delivered to Mrs. Campbell. No written agreement as to the division of the sales price was made and no books of account or other records were kept as between Mrs. Campbell and Lindsey.

''During the year 1952, construction loans were obtained and homes erected on said lots 1 through 7 and said homes were sold by Osborne. Mrs. Campbell made demand for payment of her notes but payment was not made and she thereupon during the month of August, 1952, instructed the trustee of the deeds of trust to commence foreclosure proceedings. Thereafter, and prior to the filing of the Complaint in this action all seven of said notes were paid, at various times, each in the amount of $2,000.00 plus $80.00 interest. That after paying Mrs. Campbell as aforesaid and paying of all commissions to Osborne, Lindsey lost on the venture.''

fendant was so confident that another defense had been so well established as to render it unnecessary to press the defense of estoppel that defense should not have been deemed waived.

There is nothing else in the record which remotely suggests an intention to waive the defense and, of course, the intention is controlling on the question of waiver. The court should have considered the defense of estoppel but this is not the decisive question on the appeal.

We do not find in the stipulated facts any basis for the conclusion that the transaction was a loan of money. Every pertinent fact is consistent only with the conclusion that defendant merely made an investment in plaintiff's project. In order to construe the transaction as a loan it would be necessary to ignore every stipulated fact which tends to identify it as an investment and to supply others of import to the exact contrary of those stricken.

Plaintiff says that the case of *Martin* v. *Ajax Const. Co.*, 124 Cal.App.2d 425 [269 P.2d 132], furnishes a complete answer to defendant's contention that she made an investment and not a loan. The case does not bear out that contention. The agreement under which plaintiffs Martin furnished money to Ajax provided that the Martins were ''willing to loan'' Ajax money and ''hereby loan the first party the sum of $5,000.'' They were given a note of $10,000 and a written guarantee of individual stockholders. The court held that the mere testimony of Martin that he thought the transaction was an investment was wholly insufficient to prove that it was not a loan or that he engaged in a joint venture with Ajax; there was no evidence whatever of a joint venture.

It is true, of course, that where the parties in fact intend a loan of money any attempt to disguise the nature of the loan by characterizing it as something else will be disregarded; the court will look through the form to the substance of the transaction. (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335 [163 P.2d 869, 165 A.L.R. 621].) But the courts do not find usury without evidence that usury has been committed.

Of course the burden of showing usury is upon him who claims it. (*Harris* v. *Pollack*, 101 Cal.App.2d 26 [224 P.2d 824].)

The rule which is controlling here is stated in *Coley* v. *Wolcott*, 103 Cal.App. 140 [284 P. 241], as follows: ''While courts will tolerate no subterfuges designed to evade the Usury Law, and will always admit evidence to show that a contract fair on its face is nevertheless a disguise for a usurious trans-

action, it is equally true that if a contract is subject to two constructions, one of which will render it usurious and therefore unlawful and one which will render it lawful, the courts, in the absence of other evidence requiring the contract to be construed as usurious, will give it such construction as will render it lawful. (*Shelley* v. *Byers, supra* [73 Cal.App. 44 (138 P. 177)]; *Cobb* v. *Hartenstein,* 47 Utah 174 [152 P. 424, 427]; *Ohio Inv. Co.* v. *Brown,* 89 Kan. 66 [130 P. 665]; *Lusk* v. *Smith,* 71 Kan. 550 [81 P. 173]; *German Sav. Bank & Loan Assn.* v. *Leavens,* 89 Wash. 78 [153 P. 1092]; *Martin* v. *Oklahoma State Bank,* 86 Okla. 113 [206 P. 824]; *Forman* v. *Needles,* 78 Okla. 105 [188 P. 1087].)'' The foregoing statement was quoted in part in *Moore* v. *Dealy,* 117 Cal.App.2d 89 at page 94 [254 P.2d 888] where it was said: ''The test is whether there was an attempt to evade the law. ██ As was said in *Rose* v. *Wheeler,* 140 Cal.App. 217, 219, 220 [35 P.2d 220] : 'In a usurious transaction, there must be a loan of money, which is to be repaid to the lender, with compensation for its use in an amount constituting a charge in excess of the highest permissible rate. And as a necessary concomitant there must exist the corrupt intent to exact the illegal charge for the use of the money lent. (*Lamb* v. *Herndon,* 97 Cal.App. 193, 197 [275 P. 503].) The presumptions of law are in favor of legality; and therefore if the transaction in question is open to two constructions, one making for legality, the other for illegality, then in the absence of evidence pointing clearly to usury, it is the duty of the court to adopt the construction in favor of lawfulness. (*Coley* v. *Wolcott,* 103 Cal.App. 140 [284 P. 241]; *Shelley* v. *Byers,* 73 Cal.App. 44, 57 [238 P. 177].)''' Volume 12, American Jurisprudence, pages 793-794, says: ''An agreement capable of an interpretation which will make it valid or legal will be given such interpretation if the agreement is ambiguous. Such interpretation is preferred to one which renders it invalid. It will not be interpreted so as to be invalid unless such interpretation is required by the terms of the agreement in the light of the surrounding circumstances. . . .'' The same rule is stated in 17 Corpus Juris Secundum 735-736, 1227.

According to the statement of facts the project was to subdivide the property, construct homes and sell the individual homes ''at a profit.'' The money contributed by Mrs. Campbell was for a bond ''to insure performance of the construction work agreed to by them to be performed by them in their sub-dividing plans.'' The persons designated

as "them" were plaintiff Jack B. Lindsey, Robert Osborne, Leo Wheeler and William Wishart. It was the joint project of all these gentlemen, and plaintiff was approached by Wheeler pursuant to the agreed purpose of the associates "to make efforts to obtain additional monies for investment in said sub-division plan so that their sub-division could be completed and construction of proposed homes commenced." Mrs. Campbell was not asked for a loan of money; the word loan was not used in presenting the proposition to her. She was asked "if she was interested in supplying $6,400.00 in a real estate sub-division." She "relied throughout for the handling of all transactions in connection with said sub-division upon the advice of Wheeler, who had been a personal friend of hers for several years." Plaintiff and Osborne explained to her their subdivision and construction plan and she agreed to supply $6,300 for it. She sold securities and furnished the money to Mr. Lindsey. There was then no suggestion of a loan of money. Mrs. Campbell had nothing to show that she would receive $14,000 from the venture and it was only after she had agreed to furnish capital and turned over the money that Mr. Wheeler hit upon the plan for her to be given the notes and trust deeds upon seven of the lots. Construction loans were obtained on the remaining seven; houses were built; and the places were sold. Plaintiff lost money on the venture. ■ We do not see how the trial court could have inferred from the facts stated that any of the parties to the transaction understood that it involved a loan of money. It affirmatively appeared that the proposition made to plaintiff was as found in the statement of facts "to obtain additional monies for investment in said sub-division plan." It was never proposed to her that she should loan $2,000 on each of seven of the lots. The promise of the return of $14,000 was for her "supplying $6,400.00 in a real estate sub-division." The notes and trust deeds were an afterthought. And if it was the intention of the associates to merely borrow $6,300 from Mrs. Campbell, there would have been no purpose in outlining to her the entire plan of subdivision and improvement. No books of account or other records were kept between Mrs. Campbell and plaintiff for the obvious reason that the associates guaranteed to return Mrs. Campbell $14,000 for an investment. The agreed facts expressly state that the purpose of the associates was "to obtain additional monies for investment in said sub-division" and Mrs. Campbell was asked "if she was interested in sup-

plying $6,400.00 in a real estate sub-division" and that "it would return $14,000.00 within one year." Obviously the "it" was the investment. Until the notes and trust deeds were suggested after the parties had fully arrived at their agreement it was not intimated to Mrs. Campbell that plaintiff any more than the other associates would be personally liable for the payment to her of the amount they agreed she should receive. We repeat that every pertinent fact of the statement of facts indicates that it was not only the representation to Mrs. Campbell but that it was her understanding and the understanding of plaintiff and his associates that the notes and trust deeds were given to secure Mrs. Campbell her share of the profits which it was understood the venture would produce. There was nothing unreasonable in the agreement to give Mrs. Campbell some $7,000 of profit for the investment of her money. The subdividers would not have agreed to give her $14,000 as her share had they not expected to make substantial profits. There were 14 lots to be built on. Mrs. Campbell would receive a profit of about $500 from the sale of each house. The plans of the promoters were too optimistic. The profits were not realized, and the charge of usury was obviously an afterthought. We are of the opinion that in the absence of extrinsic evidence the facts stipulated do not justify a conclusion that the transaction constituted a loan of money. It is unnecessary to determine whether the error of refusing to consider the defense of estoppel furnishes an independent ground for reversal.

The judgment is reversed with instructions to vacate the conclusions of law, to make new conclusions in accordance with the views herein expressed and to enter judgment for the defendant.

Wood (Parker), J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 29, 1955.