[Civ. No. 6099. Fourth Dist. Mar. 27, 1961.]

WHITTEMORE HOMES, INC. (a Corporation), Respondent,
v. SAM FLEISHMAN, Appellant.

Mack, Bianco, King & Eyherabide and Dominic Bianco for Appellant.

Richard Hosking for Respondent.

SHEPARD, J.—This is an action to recover interest paid on an alleged usurious loan.

In general substance, the facts revealed by the record before us are as follows: Plaintiff owned 76 lots in Bakersfield. It needed $45,000 to construct residences thereon for sale. On October 31, 1957, defendant had sold his business, the transaction was in escrow and he desired to reinvest the money shortly expected therefrom. On that date plaintiff and defendant signed an agreement by which defendant agreed to advance to plaintiff the sum of $45,000 if the money was forthcoming within 30 days from the sale of his business; that in return therefor and "other services and things of value to be furnished" by defendant, plaintiff would execute a note and deed of trust to defendant in the amount of $60,000 payable $12,000 May 1, 1958, and $48,000 in 26 months with interest at 6 per cent commencing eight months after date; that defendant was to receive $500 from each of the first 25 residences

sold and, in addition thereto, $1,000 for each lot sold whether a residence had been constructed thereon or not; that defendant would be indemnified for loss on account of any construction liens; that defendant would be paid 53½ per cent of the net profit from any residence sale; that if the 53½ per cent profit was less than $500 plaintiff would make up the difference from its own funds on each residence sale as the sales were made; and that after the payments reached the sum of $60,000 plus accrued interest, the deed of trust would be released but the 53½ per cent profit payment would go on.

That agreement was consummated by defendant's advancing the $45,000 agreed upon, and the note and deed of trust were executed. In April 1958, plaintiff asked to terminate the agreement by payment of the face amount of the note, to wit: $60,000. After some dispute and negotiation, a new agreement was drawn purporting to settle for that sum. It was paid by plaintiff to defendant on May 1, 1958. This action ensued. The court found the transaction usurious and rendered judgment for plaintiff, against defendant, in the sum of $15,000. Motion for new trial was made and denied, and defendant appeals.

### Usurious Agreement

Defendant first asserts that there is no evidence to support the trial court's findings that the agreement was usurious. He argues that the transaction was merely an "investment" with a minimum guarantee profit. ▮▮ Of course, if this transaction had amounted to a joint venture, a sale, a partnership, or a repayment of principal under specially contingent hazardous conditions, the usury law would not apply. (*Moore* v. *Dealy,* 117 Cal.App.2d 89, 95 [4] [254 P.2d 888] ; *Batchelor* v. *Mandigo,* 95 Cal.App.2d 816, 822 [3] [213 P.2d 762] ; *Ambrose* v. *Alioto,* 65 Cal.App.2d 362, 367 [2] [150 P.2d 502] ; *Lindsey* v. *Campbell,* 132 Cal.App.2d 746, 751 [6] [282 P.2d 948] ; *Atkinson* v. *Wilcken,* 142 Cal.App.2d 246 [298 P.2d 147] ; Witkin, Summary of California Law, vol. 1, p. 184; 49 Cal.Jur.2d 735, §§ 63-65.)

▮ However, as defendant states in his closing brief, it was never claimed that the transaction was one of joint venture. It was not a partnership nor a sale. It did not involve speculative security of separate second encumbrances of extremely doubtful value with likelihood of capital loss, such as are referred to in *Lindsey* v. *Campbell, supra.* It had none of the extraordinary hazards involved in *Batchelor* v. *Mandigo*

or *Ambrose* v. *Alioto, supra.* Its terminology can be construed only as a direct promise to pay money in certain sums, which simple arithmetic shows to be more than the constitutionally allowable rate of interest, with an additional promise of conditional profit. The promise to pay the $60,000 and interest thereon was unconditional. Only the 53½ per cent profit was conditional. Nowhere does there appear any monetary liability on defendant nor any provision for his contingent loss of capital investment if plaintiff's venture proved unprofitable. He had not only the sound security, but also a personal guarantee from Rex and Mrs. Whittemore against loss through construction liens and for the $500 on each residence sale.

Restricting the use of the money advanced to the construction of houses was merely an additional safety factor to defendant. It did not take away from the "advance" any of its qualities as a loan, nor did the compulsory partial payment plan from lot sales change it in that respect. Neither is the term "investment" in any way contradictory of a "loan." (*Martin* v. *Ajax Constr. Co.*, 124 Cal.App.2d 425, 433 [11-13] [269 P.2d 132].) The word "advance" in the connotation here used, commonly means a loan of money. (*Brock* v. *Fidelity & Deposit Co.*, 10 Cal.2d 512, 517 [1] [75 P.2d 605].)

### SALE OF STORE

■ Defendant argues that the sale of his store was in some way a consideration for the agreement. With this we cannot agree. The agreement was not signed until the sale had already been agreed upon with the third party. Nothing in the agreement obligated defendant to make the sale. The agreement was a mere outlet for funds already expected from the store sale. The agreement clearly shows that it would become operative only if the funds from the store sale did, in fact, become available within 30 days. Under the circumstances, we can ascribe to it no other dignity than that of a condition precedent to the effective nature of the agreement.

### SERVICES RENDERED

■ Defendant contends that the trial court was not justified in ignoring, as a vital consideration for the agreement, the recital of "other services and things of value to be furnished by" defendant. With this we cannot agree.

The nebulous character of the phrase "services and things of value to be furnished" was such that by itself it bound defendant to nothing. Its very wording creates the incipient

suspicion that it might be what the trial court inferentially, on the evidence, found it to be, viz., a straw man without real substance.

The testimony of Mrs. Whittemore that defendant actually had nothing to do; the fact that the pleadings were completed without any intimation therein of this kind of defense; that nothing of this kind was intimated in the pretrial statement of defendant; that in the taking of the deposition of Rex Whittemore (deceased by the time of trial) no question was asked from which an intimation of this defense was given, although all pleadings had by that time been completed; the comparative insubstantial character of the testimony relating to services rendered (advice on some plans and data on refrigeration) ; the testimony on impeachment of Donald G. Kendall by Robert M. Whittemore ; the testimony of defendant that he regarded the deal as an investment and many other circumstances, sufficiently justified the court in believing that the ''services to be rendered'' were at best a mere incident of the loan and not a part of the real consideration.

 In usury cases, as in others, courts may properly cut to the real truth and disregard terminology which the evidence shows was not the real substance of the agreement. As was said in *Janisse* v. *Winston Investment Co.*, 154 Cal.App.2d 580, 582 [1-3] [317 P.2d 48, 67 A.L.R.2d 225] :

''If there is any substantial evidence or any reasonable inference from the evidence to support the findings, the appellate court cannot substitute its judgment for that of the trial court. [Citations.] It is a question of fact as to whether a particular transaction is or is not usurious. [Citation.] Where the form of the transaction makes it appear to be nonusurious, it is for the trier of the fact to determine whether the intent of the contracting parties was that disclosed by the form adopted, or whether such form was a mere sham and subterfuge to cover up a usurious transaction. [Citations.] The trial court may look beyond the form of the transaction and ascertain its substance.''

 As stated in *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 340 [5] [163 P.2d 869, 165 A.L.R. 621] : ''But lenders, intent on collecting compensation for the use of money in excess of the lawful rate, seek to avoid transacting their business in the form of loans. The courts have been alert to pierce the veil of any plan designed to evade the usury law and in doing so to disregard the form and consider the substance.''

There was more than sufficient evidence to support the finding that there was an attempted evasion of the usury statute.

## Compromise Agreement

Defendant further contends that whether or not the original transaction was usurious was the subject of a bona fide dispute between the parties, hence the compromise agreement of April 30 was decisive of the rights of the parties. He cites *Lamb* v. *Herndon,* 97 Cal.App. 193 [275 P. 503], and *Credit Finance Corp.* v. *Mox,* 125 Cal.App. 583 [13 P.2d 937], for the principle that in absence of fraud or undue influence a compromise agreement concerning a transaction tainted with usury is decisive of the rights of the parties. (49 Cal.Jur.2d 695, Usury, § 29.)

But, as stated by our Supreme Court in *Westman* v. *Dye,* 214 Cal. 28, 38 [5] [4 P.2d 134]:

" 'If a transaction is usurious in its inception, it remains usurious until purged by a new contract; and all future transactions connected with or growing out of the original are usurious and without valid consideration. An original taint of usury attaches to the whole family of consecutive obligations and securities growing out of the original vicious transaction; and none of the descendant obligations, however remote, can be free of the taint if the descent can be fairly traced.' " See also *Williams* v. *Reed,* 48 Cal.2d 57, 68 [307 P.2d 353] (14).

The question comes down to whether the new agreement is a mere renewal of the old usurious contract, or if it purges the debt of the original usury. Though a contract is tainted with usury, the abandonment of the usurious agreement and the execution of a new obligation for the amount of the actual debt free from the usury and bearing only legal interest, purges the original usury and makes the second obligation valid and enforcible. (13 A.L.R. 1213, 1220.) In *Lamb* v. *Herndon* and *Credit Finance Co.* v. *Mox,* the compromise contracts were for non-usurious amounts that were legitimately due. In the present case, the lower court was bound to look at the substance and not the form of the compromise agreement which, in effect, was for payment of $60,000 and amounted to $15,000, or 33⅓ per cent, for the use of $45,000 for less than six months. This, of course, would be 66⅔ per cent per annum.

There was more than sufficient evidence that the compromise agreement did not purge the usury. As stated in

*Calimpco, Inc.* v. *Warden,* 100 Cal.App.2d 429, 448 [15] [224 P.2d 421]:

"The usury statute would have a hole in it as wide as a barn door if it were so interpreted that where a compromise figure is agreed upon, interest thereon in excess of the 10 per cent permitted by law may be charged, even though such interest added to the principal totals less than the claim originally asserted."

### MONEY HAD AND RECEIVED

Defendant finally contends that the action for money had and received was not proper in absence of rescission and an offer to restore appellant to the position he occupied before the execution of the agreement. ▪ A borrower may bring an action for money had and received to recover usurious interest paid within two years of the suit. (*Stock* v. *Meek,* 35 Cal.2d 809, 817 [6] [221 P.2d 15].) The interest portion of the contract is void, not merely voidable. (*Campbell* v. *Realty Title Co.,* 20 Cal.2d 195, 197 [1] [124 P.2d 810].)

▪ Where the action for money had and received was based on a void contract, hence a failure of consideration, no notice of rescission or offer to restore was essential. (*Westbrook* v. *Reneau,* 129 Cal.App.2d 715, 719 [1] [278 P.2d 32]; *Brooks* v. *Brooks,* 48 Cal.App.2d 347, 351 [3, 2c] [119 P.2d 970]; *Smith* v. *Bach,* 53 Cal.App. 63, 64 [1] [199 P. 1106].)

Defendant makes a somewhat abbreviated argument that there was no equity in the claim of plaintiff. This contention is without merit. There is no contention or evidence that plaintiff's action was fraudulent. ▪ Parties to a usurious transaction are not regarded as *in pari delicto.* See *Stock* v. *Meek, supra,* 817 [7, 8]; *Heald* v. *Friis-Hansen,* 52 Cal.2d 834, 837 [2] [345 P.2d 457].

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied April 18, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1961.