[Civ. No. 4234. Third Appellate District.—January 16, 1931.]

MALCOLM SMITH et al., Appellants, v. G. CAVAGLIERI MORTGAGE COMPANY (a Corporation), Respondent.

Andrew J. Copp, Jr., for Appellants.

Julius V. Patrosso and C. C. Mishler for Respondent.

MR. JUSTICE PLUMMER DELIVERED THE OPINION OF THE COURT.—This action was begun and prosecuted by the plaintiffs to recover as a penalty under the Usury Act three

times the amount of interest alleged to have been paid by them to the defendant by reason of the transactions hereinafter referred to. The defendant had judgment and the plaintiffs appeal.

Two questions are presented to us in this action for our consideration: First—Was the transaction involved a loan of money or the sale of a promissory note? Second—Has there been any payment of usurious interest?

The trial court found that the transaction constituted a sale of a negotiable instrument, and not a loan, and also that no payment had been made.

The following facts are disclosed by the record: On and prior to the seventeenth day of June, 1925, the Edwin R. Rockwell Company, a corporation, was the owner of a contract for the purchase of certain lots in the city of Los Angeles, upon which there remained an unpaid balance of the purchase price of $20,000. The corporation desired to erect an apartment house upon the premises, and also to raise sufficient money to complete the purchase price of the lots. Tentative plans and specifications for such an apartment house had already been prepared and preliminary arrangements made with Malcolm Smith and the Malcolm Smith Company to construct an apartment house in accordance with the plans and specifications, upon a cost-plus basis. With these facts in view the Edwin R. Rockwell Company, by its president, set about to secure a loan sufficient to enable the company to proceed with the erection of the proposed apartment house. According to the testimony of Edwin R. Rockwell he called upon the defendant in the early part of June, 1925, in relation to procuring a loan. This testimony is disputed by the president of the Cavaglieri Mortgage Company. However, it does appear undisputed that Malcolm Smith called upon the defendant company and had an interview with the president thereof relative to securing a loan of $110,000, to be secured by a first lien upon the property, out of which it would be necessary to pay $20,000 to complete the purchase. It appears that the total expenditure of completing the purchase of the lots upon which the apartment house was to be built, and to complete the erection of the building would entail an expenditure of about $160,000. After one or two interviews Mr. Cavaglieri agreed to advance the money, but stated, to

use his own language, that "he would purchase the note for $110,000 at a discount of $5,000", but that he would not be able to handle the other portion of the loan. Thereupon it was arranged that the Cavaglieri Company should prepare the notes and the trust deeds, the note being executed by the Rockwell Company to Malcolm Smith, and by Malcolm Smith assigned to the defendant. In pursuance of this arrangement a note in the principal sum of $110,000 from the Rockwell Company to Malcolm Smith was prepared and a trust deed securing the payment thereof drawn to be executed by the Rockwell Company. Also, notes and a second trust deed covering the remainder of the money were drawn in the office of the Cavaglieri Mortgage Company. Only the $110,000 note is involved in this action. Following the drafting of these instruments the Rockwell Company executed the $110,000 note in favor of Malcolm Smith, and a trust deed to secure the same. The note and trust deed were dated June 17, 1925, and thereafter, assigned by Malcolm Smith and his wife to the Cavaglieri Mortgage Company. No money was advanced, however, by the Cavaglieri Mortgage Company until the plans and specifications for the erection of the proposed apartment house were submitted to the Cavaglieri Company and approved by the company.

As part of the same transaction, and bearing the same date, the following agreement was entered into relative to the payments to be made by the Cavaglieri Mortgage Company to the appellants in this action. This instrument, so far as necessary to be set forth, reads as follows:

"This agreement made this 17th day of June, 1925, by and between G. Cavaglieri Mortgage Company, Inc., hereinafter referred to as the party of the first part, and Malcolm Smith, hereinafter referred to as the party of the second part:

"Witnesseth: That the party of the first part undertakes to loan to the party of the second part the sum of One Hundred Five Thousand no/100 ($105,000.00) Dollars, evidenced by a promissory note in the sum of One Hundred Ten Thousand and no/100 ($110,000.00) Dollars executed by Edwin R. Rockwell Co., a corporation, in favor of Malcolm Smith, dated June 17, 1925, due on or before six (6) months after date, with interest at eight (8) per cent per

annum, payable at maturity, and at the rate of one (1) per cent per month thereafter until paid, secured by a trust deed which shall be a first lien upon the property hereinafter described:'' (Then follows a description of Lots 4 and 5 in Tract No. 5542, city of Los Angeles, etc.)

The agreement then provides for disbursing the sum of $105,000 in installment payments, first, of $20,000; second, of $10,000; third, of $15,000; fourth, of $10,000; fifth, of $25,000; sixth, of $25,000; less accrued interest on note and miscellaneous expenses thirty-five days after notice of completion of the building has been filed, etc. Various provisions are then set forth in the contract relative to the rights of the respective parties, and among others, the following paragraph appears: ''The sum of $105,000.00 is payment in full for the assignment of said trust deed to G. Cavaglieri Mortgage Company, a corporation.'' The agreement further provided that all checks evidencing the installment payments should be made payable jointly to Edwin R. Rockwell Company and Malcolm Smith.

The testimony shows beyond contradiction that the difference between the face of the note for $110,000 and the $105,000 to be advanced, was a bonus in the sum of $5,000, as commission or profit for loaning the money, or, as termed by the defendant, ''a discount on the purchase price of the note''. It is left somewhat uncertain as to whether the agreement which we have just set forth relative to making the installment payments was executed on the same day that the $110,000 note and trust deed were executed, but the circumstances show that it was all a part of one transaction, and the instruments were all dated as of the same day. There is no dispute that the papers were all drawn in the office of the Cavaglieri Mortgage Company, nor is there any dispute of the fact that no consideration was ever paid or rendered by Malcolm Smith to the Edwin R. Rockwell Company for the execution of the note and mortgage, other than his promise to erect the apartment house. Nor is there any dispute of the fact that the $105,000 to be advanced by the Cavaglieri Mortgage Company was to be applied in the payment of the expenses of completing the apartment house, and that the checks were to be drawn in favor of the Edwin R. Rockwell Company as well as in favor of Malcolm Smith.

The testimony of G. Cavaglieri shows that he knew that no consideration for the execution of the note and mortgage had passed from the Edwin R. Rockwell Company to Malcolm Smith, other than his agreement to erect the apartment house according to the plans and specifications approved by the Cavaglieri Company. The only testimony in the record as to the compensation of Malcolm Smith is to the effect that the apartment house was to be erected upon a ''cost-plus'' basis. The agreement itself evidences the fact that the first payment of $20,000 was to be applied in clearing the title to the lots. The ledger sheets of the Edwin R. Rockwell Company, introduced in evidence, shows that the entire transaction, relative to advancing the money and the amounts paid, was carried in the name of Edwin R. Rockwell. The name of Malcolm Smith does not appear thereon.

We do not need to cite authorities in support of the statement that the court will look at the transaction and consider its substance rather than its form. In this particular many authorities have been cited by counsel relative to accommodation notes, and the right to sell negotiable paper. In 39 Cyc., page 931, we find the rule relative to sale of negotiable paper, which is supported by practically all of the authorities, to wit: ''After a negotiable instrument has once been validly negotiated by a transfer upon valuable consideration, it becomes an article of commerce and can be bought and sold as freely as any other property, the rate of discount being governed by the market value of each instrument. Such transactions are not within the letter or spirit of the usury laws.'' And on page 935 of the same volume, the following statement, which is likewise supported by the vast weight of authority: ''But when the chose discounted is obtained directly from the maker or before it has acquired validity by a transfer for value, it can be nothing more than the maker's promise to pay, and the purchase of such a promise at a discount exceeding the lawful rate of interest is merely making a loan at a usurious rate. The rule applies when the lender takes the note under such circumstances from one known to be the agent of the maker.'' (See, also, 27 R. C. L. 216.) See, also, *Rice* v. *Dunlap*, 205 Cal. 133 [270 Pac. 196], as to charging bonus where one is known to be an agent.

The evidence in this case shows conclusively that the Cavaglieri Company knew that Malcolm Smith was acting in behalf of the Rockwell Company to secure a loan; that he was advancing nothing to secure the money; that he had simply agreed, and so far as the record shows, it appears that it was an oral agreement at that time, to erect an apartment house. The Cavaglieri Company knew that Malcolm Smith, at the time the note and trust deed were transferred, that he, Malcolm Smith, could maintain no action upon either note or trust deed. This is not a case of failure of consideration after a *bona fide* sale and assignment of a promissory note. In this particular the respondent calls our attention to the case of *Flood* v. *Petry,* 165 Cal. 309 [46 L. R. A. (N. S.) 861, 132 Pac. 256, 258], and quotes therefrom, italicized, as follows: "It has long been the law in California that a failure of consideration in whole or in part after a *bona fide* assignment of a promissory note is no defense to a suit by the assignee against the maker, notwithstanding the former's full knowledge of the original consideration for which the note was given." Following this is an extended quotation from the opinion in that case. The circumstances are so radically different in the case at bar from the Petry case that nothing said therein can be considered as controlling here. We have no dispute with the statement that where a person has acquired a note in good faith for value before maturity, knowing that the consideration was an executory agreement on the part of the payee which might be broken, constitutes no defense to the note, but here, the Cavaglieri Company is shown by the record to have arranged the entire transaction and drawn all the papers involved, and was not even paying the whole consideration to the payee of the note from whom it claims to be the purchaser.

Again, our attention is called to the language found in 39 Cyc., page 1057, as follows: "When a transaction honest in form is alleged to be a mere cloak to cover usury, the existence of the corrupt usurious intent behind the device is a question for the jury. If, however, a usurious intent clearly appears from undisputed evidence it is error to submit the question of intent to the jury. But if the transaction is apparently honest, and no evidence has been given tending to show an intent to evade the usury law, it is equally erro-

neous to submit the question of intent to the jury. It is for the jury to determine whether a usurious purpose lurks behind what purports to be a sale of property, or a note legal on its face but given for a larger sum than vas actually advanced upon it, or commissions purporting to be paid to the lender or his agent for services rendered or expenses incurred in connection with the loan, or to factors and commission merchants for advances, or a loan of depreciated currency received at par, or an exorbitant charge for exchange upon the sale of a draft." Here, again, the facts disclosed by the record show that the foregoing statement of the law is not controlling here, save and except in so far as it is therein stated, "if a usurious intent clearly appears from undisputed evidence, it is error to submit the question of intent to the jury". There is no dispute in the evidence that the Cavaglieri Company drew all the instruments; knew where the money was going; knew that Malcolm Smith was acting in behalf of Edwin R. Rockwell Company to finance the undertaking; that a portion of the money was going to pay off the balance of the purchasing price of the lots; that the checks were to be drawn in favor of the Rockwell Company as well as in the name of Malcolm Smith; and that the ledger sheets of the Cavaglieri Company show that the whole transaction was carried in the name of Edwin R. Rockwell. To call such a transaction a loan is to erase from the statutes all the provisions relative to the exacting of usury and to indorse a transparent scheme to exact a bonus of $5,000 for making the loan in addition to collecting eight per cent for the first six months and one per cent interest per month thereafter, and can only be classed as one of the devices to conceal usury, fittingly referred to and characterized in 27 Ruling Case Law, page 211, section 12. The mere fact that G. Cavaglieri called it a "purchase" or "discount" of the note can be given no weight as testimony in view of the record disclosing that his company drew all the papers, passed upon the plans and specifications, carried the transaction in the name of Rockwell, advanced the money to Rockwell, paid off the purchase price, and knew that the entire transaction was an arrangement or scheme to finance the raising of money to erect an apartment house; that Malcolm Smith had done nothing or given nothing, other than his promise to build the apartment house, which was dependent

upon the securing of a loan of money to pay the expenses thereof. It is a case where the name signified nothing. The transaction speaks for itself, and speaks only in one way—the name of Malcolm Smith appears upon the papers only to enable the Cavaglieri Company to obtain a bonus in addition to interest, and thus circumvent the usury law.

The fact, however, that the finding of the court that the transaction was a purchase and not a loan, has no substantial support in the testimony, does not lead to a reversal. In order that the penalty may be enforced and damages obtained on account of the exaction of usurious interest either as interest or by way of a bonus, it must be made to appear that the usurious interest has actually been paid or that the bonus, which, taken together with the interest, stamps the transaction as usurious, must be shown to have been paid.

The complaint in this action was filed on the sixth day of July, 1926, at which date nothing had been paid to the Cavaglieri Mortgage Company on account of the principal due on the $110,000 note, nor any part of the $5,000 bonus hereinbefore mentioned. The record does show that on January 13, 1926, there was a debit charge entered against the account carried in the name of Edwin R. Rockwell of $4,400 interest on the trust deed referred to up to and including December 17, 1925. Notwithstanding this entry, however, the record shows advances made by the Cavaglieri Mortgage Company which necessarily cancels this charge. However this may be, and whatever effect may be given to the debit charge of $4,400 as provided for in the contract or agreement for installment payments heretofore set forth, it does not follow therefrom that any usurious money has been collected or was thereby collected by the Mortgage Company from the plaintiffs in this action. It may also be stated that exhibits, appearing in the record and introduced in evidence, of statements and claims made by the Cavaglieri Company a number of months after the institution of this action, indicate that the defendant intended to collect the full face value of the $110,000 note; and it does also appear in the record by exhibits and testimony admitted over the objection of the defendant, that some company or concern paid the demands of the Mortgage Company, but it does not appear that any payments were made

by or on behalf of the appellants in this action. The occurrences to which we are referring all took place some months after the beginning of this suit, and are not within the issues made by the pleading, and not tendered by way of a supplemental complaint, or otherwise. We may further state that while these matters were introduced in evidence over the objection of the defendant, it does not appear that the appellants base any claim thereon. The charge of usury and the demand for treble damages, so far as this action is concerned, is based upon the debit charges found in the account books of the Mortgage Company. No claim is made that any part of the bonus exacted for the loan had been paid to the Mortgage Company by any of the appellants.

Under the provisions of section 3 of the act defining "usury" (Act 3757, Deering's General Laws 1923), the interest or bonus or the interest and bonus if it is necessary to take both together to constitute usury, must have been actually paid. In *Haines* v. *Commercial Mtg. Co.,* 200 Cal. 609 [53 A. L. R. 725, 254 Pac. 956, 255 Pac. 805], it is specifically held as follows (quoting from the syllabus): "A sum deducted from the amount of the loan as commissions for granting it is not subject to the provisions of a statute authorizing the borrower to recover double the amount of usurious interest paid, and cannot be regarded as part of the principal of the loan for any purpose of computing the amount due and the over-payment of interest. The penalty prescribed for violation of the usury statute cannot be inflicted as to amounts not paid." In the case at bar the bonus is only a matter of a promise, to wit, as evidenced by the $110,000 note and the agreement to accept as the full amount of the loan $105,000. There is nothing in the record to show that the appellants ever tendered or paid either the $105,000 or the $110,000. In the Haines case the amount of commissions or bonus was the sum of $1020 which was deducted from the principal sum of the note when the loan was made. No part of this had been repaid by the borrower. The court included this sum in rendering judgment for treble damages, adding first this bonus to the interest that had been paid. This portion of the judgment of the trial court was reversed.

In *Coulter* v. *Collins,* 71 Cal. App. 381 [235 Pac. 465], the court held as follows (quoting from the syllabus): "Assuming that the exaction of a bonus for a loan (which

bonus was added to the amount of the loan in making up the principal amount of a promissory note given by the borrower), was in the nature of an interest demand in excess of the interest rate allowed by the usury law, nevertheless, in the absence of any payment made by the borrower, the right to treble damages given by the usury law when money is paid or value is delivered in violation of such law did not accrue, and a deed of trust given as security for said note did not constitute a thing of value paid or delivered within the terms or intention of the statute providing for such damages.''

In 39 Cyc., page 1034, in dealing with conditions precedent to the right of recovery where usurious interest is involved, the rule is thus stated: "No cause of action to recover back usurious interest accrues until such interest has been paid. However, in order to be entitled to recover back usury paid it is not necessary that the usurious payment shall be made in money; it is sufficient if it is made in property or by the delivery of notes of third persons, accepted as payment. The debt is regarded as paid by the debtor if it is paid by a third person in accordance with an agreement between such third person and the debtor, but the mere *charging of interest* in a running account or the giving of a new note including usurious interest due, is not such a payment as will allow the debtor to maintain an action and recover usury paid.'' And as further amplifying the rule relative to maintaining such actions we find the following on page 1091 of the same volume, to wit: "A mere contract to pay usurious interest is not sufficient to ground such an action.'' In 27 Ruling Case Law, page 275, section 78, the requirement as to payment is thus stated: "Statutory provisions, akin to that in the national banking act, permitting the recovery of the interest paid under a usurious contract or a multiple thereof, require the actual payment of the interest before the liability for the penalty attaches. Moreover, the law will not construe that to be a payment of illegal interest which is not such in fact, in order to subject the lender to the penalty denounced for the illegal receiving of interest, when he is guilty of an illegal bargain only, and has subjected himself only to the forfeiture imposed by law for that violation. Thus it has been held that the requirement of actual payment is not satisfied

by the circumstance that when the evidence of the debt was executed and the loan made a *usurious discount* was reserved. A reservation of that character constitutes a charging but cannot be called a payment.''

In the case of *McCarthy* v. *First Nat. Bank of Rapid City,* 23 S. D. 269 [21 Ann. Cas. 437, 23 L. R. A. (N. S.) 335, 121 N. W. 853, 855], a large number of cases are cited supporting the following statement: ''The courts also uniformly hold that the including of interest in a renewal note is not a payment of such interest, so as to entitle maker to sue for the penalty provided for payment. Neither is the deduction of a discount from the amount of the note, taken at the time of giving the note, a payment of such discount, so as to authorize a suit for the penalty providing the amount of the discount is usurious.'' (Here follows a long list of citations.) The court then says: ''These cases are based upon the theory that the mere reserving of a discount or the including of accrued usurious interest in a renewal note, while it may be the 'reserving or charging' of usury, it is not the 'paying' of same.''

To the same effect is the case of *Citizens' Nat. Bank of Danville* v. *Froman's Assignee,* 111 Ky. 206 [56 L. R. A. 673, 63 S. W. 454, 757], which case is fully annotated, where it is held as follows (quoting from the syllabus): ''The deducting of interest at an unlawful rate, by a National bank, from the amount placed to the credit of one for whom a note is discounted is not a payment of unlawful interest which will sustain an action to recover double its amount.''

While the charging of a bonus or the giving of a note for an amount greater than the principal sum loaned may subject the lender to a loss of interest in an action brought to enforce the collection of the note, it does not amount to a payment of usury interest sufficient to uphold a judgment for a penalty. Thus, in this case, if the difference between the face of the note and the amount of the money agreed to be loaned, as shown by the agreement set forth herein, cannot be included in ascertaining and fixing usurious interest paid, it does not matter what the legal effect of the bookkeeping entry relative to the $4,400 interest charge may be held to be. There is no showing of the payment of usurious interest sufficient to support a judgment for the collection

of the penalties specified in the usury law; $4,400 as interest for six months was not usurious.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 14, 1931.