[Civ. No. 17577. Second Dist., Div. One. Dec. 8, 1950.]

JOHN B. HARRIS, Appellant, v. BARNETT POLLACK et al., Respondents.

Samuel J. Crawford and Joseph T. Enright for Appellant.

Peter T. Rice and Thomas D. Mercola for Respondents.

WHITE, P. J.—Plaintiff brought an action to recover treble the amount of alleged usurious charges paid by him to the defendants in connection with the financing of a motel. Defendant Pollack by his answer alleged that he did not make a loan, but purchased a second deed of trust at a discount, and further, that plaintiff was estopped by his acts from recovering the usury penalties. Defendant Rosenblum admitted receiving a $2,500 commission, but alleged that he received it as agent of Travelodge Corporation, a construction firm. After trial before the court without a jury the court found in favor of defendants, specifically finding that de-

fendant Pollack was a purchaser in due course of notes secured by a trust deed and a chattel mortgage.

It is contended by appellant that the transaction was, as a matter of law, usurious, and that because of the knowledge Pollack had, he was under a duty to inquire further into the consideration received by the plaintiff.

Harris for some time prior to April, 1947, was the owner of a piece of real estate at Malibu Beach, Los Angeles County, California, upon which he desired to erect a motel. He also owned a furnished home and two promissory notes secured by deeds of trust. He entered into a contract with a construction company, Travelodge Corporation, for the building of the motel on a cost-plus fixed fee basis, provided he could secure financing. Harris being unable to obtain adequate financing, Mr. King, president of Travelodge Corporation, recommended that he get in touch with defendant Joe Rosenblum. Rosenblum advised King and Harris that he could procure a construction loan of $25,000, for which he would charge a commission of $2,500. This amount was far less than that required for the construction. It was thereupon agreed that Rosenblum should attempt to sell the trust deed notes held by Harris and also attempt to procure a second trust deed loan on the proposed motel.

In May, 1947, defendants Rosenblum and Pollack visited the site of the proposed construction at Malibu, and on the same day visited Harris' home, where Rosenblum introduced Pollack to Harris, and Pollack inspected the house and the furniture. Defendant Pollack testified that after they left the Harris residence Rosenblum told him Travelodge would soon have a $24,000 second trust deed on the motel site and a $6,000 second trust deed on the Harris residence, which could be bought at a discount of 25 per cent. Pollack said that he would be interested in purchasing them if and when they became available.

In June, 1947, Rosenblum opened an escrow at Consolidated Escrow Company. On June 12, 1947, Rosenblum, King, and Mr. and Mrs. Harris attended at the escrow company, and there were then deposited in the escrow the two trust deeds and notes for $24,000 and $6,000 respectively, payable to Travelodge Corporation and by it assigned without recourse, a "beneficiary's statement" executed by Travelodge Corporation, and an "owner's offset statement" executed by Harris. Pollack denied being present on this occasion.

On the following day, June 13, Pollack came to the office of the escrow company, looked over the documents that had been filed, and then executed his own escrow instructions and deposited with the escrow company his checks for $18,000 and $4,500. Pollack's escrow instructions required that the escrow company hold for him "owner's offset statement and beneficiary's statement"; that "Travelodge Corp. to furnish satisfactory completion & lien bond"; and further, that the proceeds of his checks "you will deposit with Smith & Son Inv. Co. with instructions that the same is to be paid with the proceeds of the 1st trust deed in the same manner and for the same purpose as the proceeds of the 1st trust deed." The first trust deed represented the construction loan procured by Rosenblum for Harris, and the purport of the instructions simply was that Pollack's money was to be used for the construction of the motel pursuant to the agreement between Harris and Travelodge Corporation and the requirements of the lender under the first trust deed. Pollack's instructions also specified that "of the total amount $7500.00 is to be used for the purchase of furniture, furnishings and equipment in fourteen of said motel units."

From the foregoing outline of the facts, it is immediately apparent that the owner, Harris, the broker Rosenblum, and the builder King, planned to circumvent the law against usury, in that they proposed to obtain funds by offering to pay for the use of such funds, in addition to the usual and legal interest, a sum equal to more than a third of the amount of the loan. But it does not follow that it must be held, as a matter of law, that the trial court's findings in favor of respondent Pollack are erroneous. If there be any substantial evidence to support the conclusion that Pollack was simply a purchaser in good faith of trust deed notes, then the judgment should be affirmed, however tainted the transaction may be as far as the other parties are concerned.

The applicable law, where it is claimed that a transaction ostensibly lawful is actually a subterfuge to avoid the interdiction of usury, is well settled, and with respect to a situation such as that here presented, is aptly stated in *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 340 [163 P.2d 869, 165 A.L.R. 621]: "Contractors are free to buy and sell their property, and this may include promissory notes and other instruments, at a price agreed upon, and when the bona fides of the parties is established, the percentage of profit has no relation to the usury law. . . . (Citing authorities.) . . . But

lenders, intent on collecting compensation for the use of money in excess of the lawful rate, seek to avoid transacting their business in the form of loans. The courts have been alert to pierce the veil of any plan designed to evade the usury law and in doing so to disregard the form and consider the substance. . . . (Citing authorities.) . . . The text of 27 Ruling Case Law states: 'No case is to be judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed by the whole evidence, . . . .' ''

Further, the court said: "All of the negotiations, circumstances and conduct of the parties surrounding and connected with their contracts may be material in determining whether the form thereof covered an intent to violate the usury law, and the burden of establishing evasion must be met by evidence clearly showing the intent."

Appellant insists that from the proven facts it must be held that the transaction was usurious as a matter of law, and that as a matter of law Pollack cannot be held to be a bona fide purchaser for value because, knowing what he knew of the transaction, he was under a duty to investigate further into the consideration passing from Travelodge Corporation to Harris for the execution of the notes.

In *Smith* v. *G. Cavaglieri Mortgage Co.*, 111 Cal.App. 136 [295 P. 366], the trial court's finding that the transaction was a purchase and not a loan was held to be without substantial support in the testimony. Appellant has presented an extensive argument to show the parallel between the cited case and the case at bar. The cases are indeed very similar, but there are outstanding differences. In the cited case the borrower and lender dealt directly, the documents were prepared in the office of the lender, and the evidence disclosed a written agreement between borrower and lender reciting that a loan was being made of $105,000 evidenced by a note for $110,000.

In the case at bar, in view of the trial court's finding, we must assume the truth of Pollack's testimony to the effect that he was in the business of purchasing trust deed notes at a discount; that he was approached by Rosenblum with an offer to sell trust deed notes to be acquired by Travelodge Corporation, and agreed to purchase them; and that he was not a party to any subterfuge. Pollack. did not prepare the documents or escrow instructions; this was done by Rosenblum, Harris and King. Rosenblum was the agent of Harris and Travelodge Corporation and not the agent of Pollack.

The burden of showing an intent to evade the usury law rested on the plaintiff. The trial court concluded that there was no such intent on the part of Pollack. We cannot hold that there is no substantial support for that finding. It is true that Pollack knew that his funds were to go into the construction of the motel and therefore that Harris was the direct beneficiary of the loan. When Pollack inspected the documents at the escrow company, he knew that the trust deeds and notes were dated June 12 and June 13 and that one indorsement was dated June 18, and that none of the documents had been recorded; also, he may have known that Harris' escrow instructions directed, "you are authorized to deliver (the trust deeds and notes) to Travelodge Corporation without consideration through this escrow." It was Pollack's duty, in these circumstances, argues appellant, to inquire further into the nature of the transaction between Harris and Travelodge Corporation, and having failed to do so, he is chargeable with actual knowledge.

Under section 3137 of the Civil Code, it is the settled rule that "mere knowledge of facts sufficient to put a prudent man on inquiry, without actual knowledge, or mere suspicion of an infirmity or defect of title, does not preclude the transferee from occupying the position of a holder in due course, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith. . . . (T)his rule is subject to the qualification that 'where the circumstances are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the instrument or transaction, such indorsee is charged with knowledge.' " (*Christian* v. *California Bank*, 30 Cal.2d 421, 425 [182 P.2d 554].)

It cannot be held as a matter of law that Pollack should have pursued the inquiry further than he did. He knew, of course, that the consideration moving from Travelodge Corporation to Harris was the undertaking of the former to construct the motel. He required of Travelodge a "beneficiary's statement" and of Harris an "owner's offset statement," and by these documents was assured that as between Travelodge and Harris the transaction was bona fide. It ill becomes Harris to now assert that these documents were false and a means of entrapping Pollack into putting his money in a risky venture. A somewhat parallel situation is found in *Baker* v. *Butcher*, 106 Cal.App. 358 [289 P. 236], in which the evidence was held sufficient to support a finding that the holder of a note was a

bona fide purchaser thereof without knowledge of a usurious agreement between the makers and the payee. The court further held that the certificate of the makers of the note that they claimed no offsets or legal defenses constituted an estoppel *in pais* which precluded them from relying upon usury as a defense against the note.

The question of the good faith of respondent Pollack is one of fact, to be determined from a consideration of all the evidence, and is therefore governed by the familiar rule that this court is without power to disturb the finding made by the trial court who saw and heard the witnesses, and observed their demeanor and manner of testifying, and determined that Pollack acted in good faith. The issues on this appeal present no exception to the general rule as to the limited powers of an appellate court, when, as is usual in contested cases, there appear conflicts and inconsistencies in the evidence. It is the duty of the trial court to resolve those conflicts and inconsistencies, and where substantial evidence which is believed by the trial court supports his conclusion, we are without power to disturb it.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1951. Carter, J., and Traynor, J., voted for a hearing.