[Civ. No. 19764. Second Dist., Div. Two. Apr. 8, 1954.]

EDDIE J. MARTIN et al., Respondents, v. AJAX CONSTRUCTION COMPANY (a Corporation) et al., Appellants.

426

W. M. Freiburghouse, Freiburghouse & Woodard and Richard A. Perkins for Appellants.

John O. Akin for Respondents.

MOORE, P. J.—The question posed for decision is whether it is usurious where an agreement to loan $5,000 to a construction company and to receive $10,000 in return in any event "on or before one year from the date hereof" where the money is to be used in building houses on tracts specified by the company or on "such other tracts as might be selected by" the company, the money to be secured by irrevocable assignments of specified sums to be payable to the lender, where, contemporaneously with the agreement, the company executes and delivers its promissory note in the sum of $10,000, causes its principal stockholders to execute a guaranty of its payment, and where, at the expiration of the year, the company executes an agreement of similar tenor for the payment of the sum of $250 as a bonus for the payee's extension for 90 days of the loan period of the $10,000 note.

On November 21, 1947, appellant Ajax Construction Company, a corporation herein referred to as "Ajax," and respondents, Mr. and Mrs. Martin, signed a writing which con-

tained the following: Ajax "is about to engage in a larger, more active program of construction." Martins are "willing to loan" Ajax money to assist this program. The Martins do "hereby loan the first party the sum of $5,000." Ajax represents that "it is about to commence a construction program of 150 duplex or double bungalows, together with 40 single family residences" on certain tracts if available, or "such other tract or tracts as might be selected" by Ajax "until 150 duplex . . . and 40 single residences shall have been built." Ajax "agrees that upon completion of each building . . . it will execute and deliver . . . an irrevocable assignment" of $100 or $50 upon each duplex or single so completed. Ajax agreed that the Martins "shall be entitled to have and receive, in consideration of said loan . . . the total sum of $10,000.00, payable . . . on or before one year from the date hereof."

Pursuant to such agreement and coeval therewith, Ajax executed its promissory note in the sum of $10,000 in favor of respondents and caused its principal stockholders, C. W. Beck and W. H. Beck, to execute a guaranty of the note on the reverse side thereof.

When one year had elapsed and appellants were unable to go through with their original building plan, Mr. Chris W. Beck called on respondents, made his explanations for the delays and offered to execute an agreement to pay respondents $250 as a bonus for their extension of the maturity date of the original note. Pursuant to respondents' acceptance of such offer, Ajax executed its written agreement to pay $250 for such extension and agreed to pay both notes "from the sales proceeds of the Compton duplexes or upon our receipt of the loan residue, whichever event occurs first" —which agreement was accepted by respondents.

After the note had matured, appellants paid only $6,000 on account of a total indebtedness of $10,250. Thereafter, on October 17, 1950, respondents sued in the superior court for the unpaid balance. In their answer, appellants alleged usury in the loan transaction and at the same time filed their action in the municipal court for treble damages for the usurious interest allegedly already paid. Respondents counterclaimed in the municipal court action with allegations identical with those of their complaint in the original suit. The actions having been consolidated for trial, the result was a judgment against Ajax and its guarantors and in favor of respondents for $4,250, on the theory that the money was paid

to Ajax on a joint adventure contract. Also, Ajax' claim for treble damages was rejected. The appeal is from such judgment in its entirety and from the order denying appellants' motion for a new trial. The latter order is non-appealable and the purported appeal therefrom will be dismissed.

Appellants have expressly waived their appeal from that part of the judgment denying relief under their action for treble damages. However, they contend that there is no substantial evidence to support the finding of a joint adventure.* Such language is purely a conclusion of law and in no particular finds the presence of the essential elements. Neither do the other findings nor the facts in proof justify the judgment. Under the Usury Act (2 Deering's Gen. Laws, Act 3757), respondents made a contract in violation of section 2 which forbids any person to receive in money "any greater sum . . . for the loan or forbearance of money at the rate of [ten] dollars upon one hundred dollars for one year."† ■ The general findings that the agreement was not usurious, that it was a joint venture, and that "the usury law was never intended to be applicable to the transaction" are legal conclusions and therefore do not impair the specific findings of fact established by competent evidence. Such general findings, having no legal status, must yield to the findings of specific acts which effectually declare a nullity the "stipulation" in the contract to pay interest at any rate in excess of 10 per cent per annum.

The vital core of a usurious action is the charge that the alleged usurer advanced or loaned money and contracted with the recipient thereof that interest on the loan should exceed the maximum charge allowed by law. ■ The findings that respondents and Ajax entered into a written agreement whereby the former would advance to Ajax the sum of $5,000 and Ajax agreed to pay respondents $10,000 "on or before

---

*"VIII. That it is true that the transaction herein was in a fair sense a joint adventure rather than a loan and that the usury law was never intended to be applicable to the transaction which is the basis of the two cases herein consolidated for trial, and so tried, and that said written contract is not an usurious one and the venture contemplated therein has been successfully completed."

†Ten per cent per annum. (Const., art. XX, § 22; Stats 1919, p. 83; *Penziner* v. *West American Finance Co.*, 10 Cal.2d 160 [74 P.2d 252], holds that the adoption of section 22 of article XX of the Constitution supersedes only those portions of the Usury Act which are repugnant to the latter.)

one year from the said date'' of the loan; that Ajax agreed to, ''upon the completion of each building, execute and deliver unto plaintiffs an irrevocable assignment'' of a definite sum to be paid respondents through an escrow or disbursing agency; that at the same time Ajax ''executed and delivered to respondents its promissory note in the principal sum of $10,000.00 and that by the terms of said promissory note the said defendant agreed to pay to plaintiffs, or their order, said sum twelve months after said date''; that said Chris W. and W. H. Beck in writing guaranteed payment of $10,000 to respondents; that on November 22, 1948, Ajax and respondents agreed in writing upon a 90-day extension of the due date of the $10,000—for which appellants should pay a bonus of $250; that Ajax had paid a total of $6,000 on the amount of its debt—such findings spell out a usurious loan and a repayment of the principal with interest in excess of the lawful rate.

Respondents contend that by virtue of the fact that the contract for the loan referred to the Ajax construction projects, the transaction was not a loan. Now, it was agreed and found that Ajax represented that it was about to commence construction upon a tract to be selected by it. There was no agreement that respondents would specify the tracts, or would be consulted with reference to such lands as might be used for building sites. ▮ The loan character of the transaction was not altered by the fact that the parties agreed upon the use to which the money should be applied. Such provision serves to forestall a borrower from investing the proceeds of a loan in an illegal or ill-advised enterprise.

▮ Ajax' agreement to make partial prepayments on account from funds derived from the sales of houses did not affect its unconditional obligation to pay $10,000 within a year, nor entitle Ajax to a discount on the principal of its debt. The compulsory partial prepayment scheme was a type of security for respondents and a safety valve for appellants, but with it or without it, Ajax according to its note owed respondents the $10,000 until it should be paid. The note of Ajax was a definite agreement to pay, and this action is proof that respondents so regarded it. Even though the parties indicated by a contemporary writing the fund from which repayment should be made and thereby set forth the circumstances which gave rise to the instrument, the note was still an unconditional promise to pay. (Civ. Code, § 3084 (1), (2).)

■ The findings that appellants solicited the money and that they prepared the contract for its repayment with interest at 100 per cent per year do not diminish the rigor of the usury. An illegal contract cannot have the vital spark of legality infused into it by the mere hand of the man who subsequently asserts its nullity. The voice of him who induces an unlawful transaction has never attained to such virtue as will validate an unlawful contract; nor will the application of his hand to the preparation of an instrument evidencing an agreement effect the interference of divinity. ■ The very finding that Ajax executed the unconditional promissory note for $10,000 payable one year from its date fixes the transaction as a loan and the vices of the instrument may be asserted by its guarantors as well as by the maker. ■ In order to bar the defense of usury, the illegal provisions in the instruments must have been knowingly and fraudulently inserted. (*Nikkel* v. *Lindhorst,* 85 Colo. 334 [276 P. 678, 63 A.L.R. 959, 962]; 55 Am.Jur. 394.)

■ For the same reasons, the writing which extended the due date of the $10,000 note for 90 days in consideration for Ajax' payment of $250 was likewise a violation of the Usury Act and it also is a nullity. It is a part of the enterprise evidenced by the first note and bears all the markings of an illicit deal.

In support of their contention that the original agreement is not usurious, respondents cite authorities which announce the following rules:

1. Courts will not permit an evasion of the Usury Law by any subterfuge.

2. It is always permissible to show that a transaction ostensibly lawful actually constitutes a usurious loan.

3. The test is whether there was an intent to evade the law, and the circumstances and negotiations which preceded or accompanied the transaction may be material in determining such intent. (*Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564 [203 P.2d 758]; *Milana* v. *Credit Discount Co.,* 27 Cal.2d 335, 340 [163 P.2d 869, 165 A.L.R. 621]; *Harris* v. *Pollack,* 101 Cal.App.2d 26, 29 [224 P.2d 824]; *Batchelor* v. *Mandigo,* 95 Cal.App.2d 816, 820 [213 P.2d 762].)

4. Any doubt as to the usurious character of a transaction will be resolved in favor of its legality. (*Coley* v. *Wolcott,* 103 Cal.App. 140, 146 [284 P. 241].)

5. While the question of whether the contract involved was usurious was one of fact for the trial court, its determina-

tion must be based upon substantial evidence. (*Thomas* v. *Hunt Mfg. Co.,* \*(Cal.App.) 263 P.2d 22; *Harris* v. *Pollack, supra.*)

6. The burden of establishing the evasion of the usury statute rested upon the party alleging that the transaction was usurious. (*Thomas* v. *Hunt Mfg. Co., supra; Harris* v. *Pollack, supra,* p. 30.)

7. The presumptions of law are in favor of legality. (*Rose* v. *Wheeler,* 140 Cal.App. 217, 220 [35 P.2d 220].)

But the controversy at bar may be distinguished on its facts from the decisions cited by respondents. In each of them a transaction termed ''a partnership,'' ''a sale'' or ''a joint venture'' and ostensibly lawful is alleged to be in reality a loan or forbearance of money with interest paid in excess of that allowed by law. In contrast, the action here is based upon instruments which entitle the transaction a ''loan'' and disclose a usurious interest rate on their faces.

Under such circumstances, rules of law different from those urged by respondents are applicable. Intent to exact a usurious rate of interest is conclusively presumed from an instrument which clearly shows the character of the agreement and no evidence of intent or lack of same is required. (*Martin* v. *Kuchler,* 212 Cal. 536, 539 [299 P. 52]; *Wood* v. *Angeles Mesa Land Co.,* 120 Cal.App. 313, 324, 325 [7 P.2d 748]; *Smith* v. *G. Cavaglieri Mortgage Co.,* 111 Cal.App. 136, 143 [295 P. 366]†.) The fact that the parties to the loan did not recognize it as being unlawful when it was entered into does not prevent it from being so, unless fraudulent representations were made concerning the transaction. (*Stock* v. *Meek,* 35 Cal.2d 809, 818 [221 P.2d 15].) There are no allegations of or contentions as to the existence of fraud and no evidence of any was introduced.

Respondents base their claim of right to recover upon the theory that the written instruments containing the promises to pay $10,250 are the indicia of a joint adventure relationship existing between them and appellants. Inasmuch as they rely upon writings which violate the Usury Act and which, as evidences of debt, are, to the extent of $4,375, void, it devolved upon respondents to establish the existence of a joint adventure. While the court made a finding ''that the

---

\*A hearing was granted by the Supreme Court on Jan. 11, 1954.

†A reading of this opinion discloses that the word *not* or its equivalent has been omitted in line 25, p. 143 of 111 Cal.App. The sentence should begin, ''Not to call such a transaction a loan . . .''

transaction herein was in a fair sense a joint adventure rather than a loan'' the record reveals no substantial evidence to support such finding. Neither does the term ''advance'' nor the word ''invest'' have such significance as will indicate that the contracting parties intended to form a partnership or to engage in a joint venture. Both words are ambiguous. Each applies equally to a loan or a joint venture. The same may be said of the statement of the purpose for which the money was to pass from respondents to appellants. To determine the issue, one must look to those elements of a transaction which exist in a loan but not in a joint adventure and vice versa.

In the case of a loan, the lender does not share in the profits of the enterprise; neither does he run any risk of loss of his capital other than that of insolvency of the borrower, attendant upon all loans. Here there is an unconditional promise to pay on the part of Ajax and its guarantors. Respondents had no control over the management of the building enterprise; they could not designate the lands on which the houses should be built, the materials to be used, the laborers that should be employed. They had no voice in arranging terms for the sales of the new homes. There was no responsibility on their part for any tort or contract liabilities appellants might incur. In contrast, with the joint adventure no financial return is promised the party supplying the capital. In exchange for a share in the earnings and residue, he takes the risk of failure of the enterprise and of total loss. When, in a joint venture, total loss occurs, the financier has no claim against the assets of his coadventurers and in many situations he will be personally liable for their acts. While it is true that the presence or absence of one or more of these identifying characteristics is not conclusive as to the nature of a transaction, yet, when as in the present action, the record discloses evidence of each of the elements of a loan transaction, but no evidence of any of the elements of a joint adventure, we are constrained to conclude that the judgment is without substantial support in the evidence and that the pertinent findings of the essential facts require a reversal. Indeed, as final proof of the character of the transaction, Mr. Martin testified that he desired the guaranty of C. W. Beck and W. H. Beck on the note. ''I requested signatures be placed on the back side of the note—we just felt we wanted a little more security.''

Parol testimony as to the intent of the parties was received but no item of such proof tends to change this conclusion. Mr. Martin testified that he thought of the transaction as an investment. In law, this does not contradict the terms of the instruments; loans of money, often secured by mortgage or trust deed, are considered very good investments. Respondents' failure to require immediate security for their money indicates nothing more than a willingness to sacrifice security for a chance to satisfy their greed or it was the fruitage of a near horizon in the world of business.

If 90 days is considered to be one quarter of a year, a charge of $250 for a 90-day extension of a $10,000 note would not be usurious, being exactly 10 per cent per annum. But since the promise to pay $5,000 for the use of $5,000 for one year was null and void, respondents had a right to collect only $5,000 on the note. As to the $5,000 interest, there was no forbearance; as to the $5,000 principal, the $250 was a usurious charge and therefore null and void.

The purported appeal from the order denying the motion for a new trial is dismissed.

That part of the judgment ordering that Ajax Construction Company take nothing by reason of its complaint is affirmed.

That part of the judgment providing for plaintiffs Martin to recover the sum of $4,250 together with costs is reversed and it is ordered that the judgment be so modified that plaintiffs take nothing by their complaint.

McComb, J., and Fox, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 3, 1954.